2001 WY 99

**Gregory John HIXSON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 00–140.

Supreme Court of Wyoming.

Oct. 18, 2001.

Sylvia L. Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Ryan R. Roden, Assistant Appellate Counsel; Diane E. Courselle, Director, Defender Aid Program; and Mark Scarr, Student Intern., Representing Appellant.

Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and Thomas Kelley, Student Intern., Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1]   This is an appeal from a Judgment and Sentence entered after the appellant, Gregory John Hixson, was convicted by a jury of conspiracy to manufacture a controlled substance, in violation of Wyo. Stat. Ann. §§ 35–7–1031(a)(i) and 35–7–1042 (LexisNexis 2001), a felony, and two counts of possession of a controlled substance, in violation of Wyo. Stat. Ann. § 35–7–1031(c)(i) (LexisNexis 2001), both being misdemeanors. The primary issue is the sufficiency of an affidavit that resulted in the issuance of a search warrant.  The appellant also argues that the plain view doctrine is not available to the State to salvage the fruits of the search. For the reasons set forth below, we reverse.

## ISSUES

[¶ 2]   The issues before this Court are:

1.   Was the affidavit sufficient to support the judicial officer's conclusion that probable cause existed for issuance of the search warrant?

2.   Was the seizure of items from the appellant's home during his arrest nevertheless justified under the plain view doctrine?

## FACTS

[¶ 3]   Analysis of this case must begin with a chronology of significant events.  On August 10, 1999, law enforcement officers worked with a confidential informant (CI1) to purchase controlled substances from Jason Schibig.  CI1 told Wheatland Police Officer Don London that Schibig had told her that Schibig had purchased the controlled substances from the appellant.  On August 14, 1999, the police officers worked with a second confidential informant (CI2) to purchase controlled substances directly from the appellant.  On August 25, 1999, an Information was filed charging the appellant with unlawful delivery of a controlled substance based

on the August 14, 1999, transaction.[1] Also on August 25, 1999, an arrest warrant was issued for the appellant, and Officer London signed an affidavit to support his request for a search warrant directed to the appellant's residence. The search warrant was obtained on August 26, 1999, and executed, along with the arrest warrant, on August 27, 1999. Finally, a second Information was filed on August 28, 1999, charging the appellant with the three counts that are at issue in this appeal. The charges contained in the second Information stemmed from evidence obtained during the search of the appellant's residence pursuant to the warrant, and on his person following his arrest.

[¶ 4] After being bound over to the district court for trial on all four of the charges, the appellant filed a Motion in Limine to Suppress Evidence. The gist of that motion was that Officer London's affidavit failed to provide a substantial basis from which the issuing judicial officer could conclude there was probable cause to issue the search warrant. Specifically, the appellant contended that the affidavit contained conclusions and false statements. The present appeal is from the district court's denial of the motion to suppress evidence.

## DISCUSSION

### THE SEARCH WARRANT

[¶ 5] The Fourth Amendment to the United States Constitution and Wyo. Const. art. 1, § 4 both protect the people against unreasonable searches and seizures. This Court has had many occasions to compare and apply these two provisions. *See Cordova v. State*, 2001 WY 96, ¶¶ 5–11, 33 P.3d 142, 146–148 (Wyo.2001) and *Vasquez v. State*, 990 P.2d 476, 482–89 (Wyo.1999). Because of the desire recognized in *Cordova*, 2001 WY 96, ¶ 6, 33 P.3d at 146, and *Vasquez*, 990 P.2d at 486, to "develop our own constitutional principles under the state provision," we be-

gin by looking to Wyo. Const. art. 1, § 4, which provides:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized.

*See Cordova*, 2001 WY 96, ¶ 6, 33 P.3d at 146; *Vasquez*, 990 P.2d at 485. Of significance to our analysis is the language therein requiring the probable cause finding for the issuance of a search warrant to be supported by affidavit.[2] The requirement of an affidavit "strengthens" the Wyoming citizen's rights by creating a permanent record. *Vasquez*, 990 P.2d at 483; *Davis v. State*, 859 P.2d 89, 93 (Wyo.1993).

[¶ 6] Wyoming's law concerning the probable cause necessary for the issuance of a search warrant, as well as the standard for review of that decision, is succinctly stated in *Davis*, 859 P.2d at 94 (*quoting Hyde v. State*, 769 P.2d 376, 378, 379 (Wyo.1989); *Bonsness v. State*, 672 P.2d 1291, 1292 (Wyo.1983); *Ostrowski v. State*, 665 P.2d 471, 478 (Wyo. 1983); *United States v. Shelton*, 742 F.Supp. 1491, 1498–99 (D.Wyo.1990); and *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978)):

> In order to issue a search warrant, the judge or magistrate must have a "substantial basis" for concluding that probable cause exists. * * * The judge or magistrate must be supplied with sufficient information to support his independent judgment that probable cause exists. * * * The affidavit "must include facts sufficient to warrant a reasonably prudent and cautious man to believe that a crime has been committed and that there is evidence of the crime at the place to be searched."

---

1. The appellant was acquitted of this charge, so it is not one of the convictions being appealed in the instant case.

2. The Fourth Amendment to the United States Constitution reads as follows:
   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by **Oath or affirmation**, and particularly describing the place to be searched, and the persons or things to be seized.
   (Emphasis added.)

\* \* \* While mere suspicion is not enough, certainty is not required. \* \* \*

There is a presumption of validity with respect to the affidavit supporting a search warrant. \* \* \* Furthermore, the affidavit is to be tested by much less vigorous standards than those governing the admissibility of evidence at trial. \* \* \* The issuing judge's determination should be paid great deference upon appeal. \* \* \* Because of the preference for warrants, and the desire to encourage law enforcement personnel to seek warrants, any doubt should be resolved by sustaining the search.

We further delineated the nature of our scope of review in *Cordova*, 2001 WY 96, ¶¶ 9–15, 33 P.3d at 146–147.

▆▆▆ [¶ 7] We traditionally review the sufficiency of an affidavit to support the issuance of a search warrant under Wyo. Const. art. 1, § 4 *de novo*, giving deference[3] to the issuing magistrate's determination of probable cause such that it places the burden on the appellant to prove, by a preponderance of the evidence, that his rights were violated. *Cordova*, 2001 WY 96, ¶ 10, 33 P.3d at 148; *Hall v.* State, 911 P.2d 1364, 1367 (Wyo. 1996); *Guerra v.* State, 897 P.2d 447, 452 (Wyo.1995). Review of the magistrate's decision is accomplished under a "totality of the circumstances" test, but it must not be forgotten that, in determining probable cause to issue a search warrant, the magistrate is limited to "the four corners of the proffered affidavit in determining existence of probable cause."[4] *Southworth v. State,* 913 P.2d 444, 448 (Wyo.1996); *Hall,* 911 P.2d at 1368; *Guerra,* 897 P.2d at 453; *Ostrowski,* 665 P.2d at 478. Likewise, Wyoming's constitutional affidavit requirement means that

"[s]upplemental testimony taken [during a suppression hearing] cannot be considered in determining whether probable cause existed at the time the warrant was issued."[5] *Cordova*, 2001 WY 96, ¶ 9, 33 P.3d at 147. The affidavit must "supply the issuing officer with sufficient information to make an *independent* judgment that probable cause exists for the warrant. To that end, the affidavit must include more than bare conclusions of the affiant" and the affiant must "adequately articulate the factual basis for their request...." *Cordova*, 2001 WY 96, ¶¶ 13–14, 33 P.3d at 148 (emphasis in original).

[¶ 8] The affidavit used to obtain the warrant to search the appellant's residence reads in full as follows:

### AFFIDAVIT OF DON LONDON

COMES NOW the Affiant, Don London, who after being duly sworn upon his oath, states as follows:

1.   I am employed as an officer with the Wheatland Police Department.

2.   I am certified as a peace officer in the State of Wyoming, and have been so certified at all times relevant herein.

3.   Pursuant to an investigation conducted in Wheatland, Wyoming, a confidential informant purchased controlled substances from a Jason Schibig.

4.   As part of the purchase on August 10, 1999, money was given to Schibig by the confidential informant at a motel in Wheatland.

5.   After receiving the money from the confidential informant, Schibig traveled to 905 14th Street, Wheatland, and then re-

---

3.   As we stated in *Cordova,* this deference is not " 'to be employed to blindly sustain the actions of the magistrate or to place any reviewing court in a position that it may refuse to examine the factual basis for such issuance.' " *Cordova,* 2001 WY 96, ¶ 11, 33 P.3d at 148 (*quoting Smith v. State,* 557 P.2d 130, 133 (Wyo.1976)).

4.   "[I]t is the information available at the time the warrant was issued that is material to the question of probable cause." *Lee v. State,* 2 P.3d 517, 524 (Wyo.2000). Oral statements of witnesses made at the time may be considered by the

magistrate only if they have been made and recorded pursuant to the formalities of W.R.Cr.P. 41(c). *Guerra,* 897 P.2d at 453. As in *Guerra,* there is no suggestion in the record of the instant case that the officer's affidavit was supplemented in this manner.

5.   An exception "to this rule applies when defendants meet their burden of establishing by a preponderance of the evidence that the affiant gave deliberately false statements or recklessly disregarded the truth in creating the affidavit." *Cordova,* 2001 WY 96, ¶ 9 n. 4, 33 P.3d at 147 n. 4.

turned to the motel bringing marijuana and methamphetamine.

6. On a second occasion on that same date, Jason Schibig received an additional order for methamphetamine and again traveled to 905 14th Street, Wheatland, and returned bearing the controlled substance.

7. The amounts of controlled substances ordered by the confidential informant and delivered by Schibig were of differing weights and discussion was had between Schibig and the confidential informant of the differing weights of the materials and the various pricing for different amounts of these substances.

8. One of the residents at 905 14th Street, Wheatland, is a Gregory John Hixson.

9. On August 14, 1999, a different confidential informant purchased approximately ¼ oz. of marijuana from Mr. Hixson.

10. In the course of the Schibig transactions, Mr. Schibig informed the confidential informant that the drugs he was delivering were coming from Hixson.

11. The serial numbers of all bills used in the transactions were recorded.

12. Based upon the foregoing information, the undersigned believes that Hixson is actively engaged in the distribution of controlled substances including both marijuana and methamphetamine and that he is keeping and storing those controlled substances at his residence at 905 14th Street, Wheatland, Wyoming.

13. The undersigned requests that the Court issue a search warrant authorizing the search of the premises at 905 14th Street for controlled substances, scales, packaging material and business records associated with the distribution of controlled substances and money delivered in exchange for the controlled substances in the transactions noted above.

14. The premises at 905 14th Street include a number of out buildings and parked vehicles which may be being used to store these materials.

FURTHER AFFIANT SAITH NAUGHT.

[¶ 9] Counsels' arguments and the district court's comments at the suppression hearing focused on the distinction between facts and conclusions.[6] One example from the affidavit may suffice to illustrate the nature of the discussion. Paragraph 3 states: "Pursuant to an investigation conducted in Wheatland, Wyoming, a confidential informant purchased controlled substances from a Jason Schibig." The gist of the appellant's argument is that, from this statement, the magistrate could not tell who conducted the investigation, or who determined that an informant purchased controlled substances from Schibig. The information is not attributed to any particular source. Was Officer London part of the investigation? Did Officer London witness the purchase? Was it the informant or someone else who told Officer London of the purchase? Similar uncertainty pervades the affidavit's remaining paragraphs.

[¶ 10] The prosecutor argued, and the district court concluded, that a statement such as that found in paragraph 3 of the affidavit is not a conclusion, but is a statement of fact. The State's argument is that "an informant purchased drugs from Schibig" is a statement of fact. The district court concluded that a failure to attribute an individual fact to a particular source does not render the fact a conclusion.

■■■ [¶ 11] We do not find the attempt to categorize the statements of this particular affidavit as either facts or conclusions to be helpful in deciding the issue before us. The real difficulty with the affidavit is that it did not provide the issuing magistrate with sufficient information from which he independently could assess the reliability of the state-

---

6. Questions were also raised about the truth of some of the statements made in the affidavit. For example, the statement in paragraph 11 apparently was not accurate because the confidential informant made change with the "buy money" at a convenience store before one of the transactions. Because we are reversing based on the nature of the affidavit as a whole, we need not discuss the effect of the alleged inaccuracies. *See Davis*, 859 P.2d at 92–94, for a review of the law in regard to false statements in search warrant affidavits.

ments made. It is true that hearsay, in general, and statements of informants, in particular, may provide the basis for the issuance of a search warrant. *McCutcheon v. State*, 604 P.2d 537, 543 (Wyo.1979) (*quoting Croker v. State*, 477 P.2d 122, 127 (Wyo.1970)). Under the "totality of the circumstances" test, however, there must be information provided within the affidavit from which the magistrate may assess the veracity and the basis of knowledge of the persons supplying the information. *Cordova*, 2001 WY 96, ¶ 15, 33 P.3d at 149. In our case, because the affidavit does not identify the foundation for any of the statements, be they fact or conclusion, it is impossible to assess their reliability.

[¶ 12]   Officer London's affidavit simply does not compare to the affidavits found to be sufficient, for example, in *Lee v. State*, 2 P.3d 517, 521–25 (Wyo.2000); *Southworth*, 913 P.2d at 447–49; and *Hall*, 911 P.2d at 1368–69. Nor does it contain the "confirm[ations] by the personal knowledge" seen in the affidavit approved in *Almada v. State*, 994 P.2d 299, 312 (Wyo.1999). For a judge or magistrate to issue a search warrant, the affidavit of probable cause must contain sufficient information for an independent determination of the reliability of the statements made therein, which shall include sufficient identification of the source of the information.[7]

**PLAIN VIEW**

[¶ 13]   Neither the federal nor the state constitution forbids *all* searches and seizures done without a warrant. What are prohibited are ***unreasonable*** searches and seizures. One of the recognized exceptions to the warrant requirement is the "plain view doctrine." As that doctrine is presently formulated in Wyoming, it contains three requisites for the lawful seizure of property:

(1) the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; (2) the incriminating character of the evidence must be immediately apparent; and (3) the officer must have a lawful right of access to the object itself.

*Taylor v. State*, 7 P.3d 15, 21 (Wyo.2000) (*citing Horton v. California*, 496 U.S. 128, 136, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990)). The first factor is sometimes stated as a requirement that "the officer is lawfully present in the place in which the objects are found...." *Callaway v. State*, 954 P.2d 1365, 1370 (Wyo.1998). A former fourth factor, that there be exigent circumstances, has been abandoned. *Pendelton v. State*, 966 P.2d 951, 954 (Wyo.1998) (*citing Jones v. State*, 902 P.2d 686, 692 (Wyo.1995)).[8]

[¶ 14]   The plain view doctrine arises in our case out of the fact that, when the officers arrived at the appellant's residence with the search warrant issued on August 26th, they also possessed the warrant issued on August 25th for the appellant's arrest. It is the State's contention that the arrest warrant gave the officers "lawful presence" in the residence, regardless of the validity of the search warrant. Indeed, the district court came to such a conclusion at the end of the suppression hearing. Application of the three-part test set forth in *Taylor* requires a sojourn into the evidence presented at the suppression hearing.

[¶ 15]   The suppression hearing transcript contains thirty-nine pages of Officer London's testimony. The bulk of his testimony concerns the issuance and execution of the search warrant. Seemingly as an afterthought, the prosecutor's final question to Officer London on cross-examination, and the officer's response, were as follows:

Q.   Was there evidence in plain view within the house once you went in there?

---

7.   The specific identity of the confidential informant need not be revealed in the affidavit so long as the test of reliability can otherwise be made. As in *Cordova*, we do not now choose to adopt a "rigid test for the level of factual support or corroboration necessary to make a determination of adequate probable cause...." *Cordova*, 2001 WY 96, ¶ 15, 33 P.3d at 149.

8.   For an analysis of the underpinnings of the plain view doctrine, including the different rights implicated by a search, as opposed to a seizure, see *McDermott v. State*, 870 P.2d 339, 343–45 (Wyo.1994). Only the exigent circumstances requirement of *McDermott* has been overruled.

A. Yes, there was.

[¶ 16] No other testimony having to do with plain view was elicited during the hearing. In fact, Officer London, the only officer to testify at the hearing, testified further that when the other officers entered the house and detained the appellant, Officer London was not present because he was chasing a fleeing suspect down the alley behind the house. Nevertheless, in a colloquy with counsel at the end of the hearing, the district court followed up on the prosecutor's question by asking defense counsel:

THE COURT: Let me ask you one other question, back to the warrant issue. The testimony indicates that the officers, when they went to this house, had an arrest warrant for Mr. Hixson as well. So didn't they have a right to be on the premises, with or without a search warrant?

After a brief discussion about the arrest warrant, the district court then asked defense counsel two more questions:

THE COURT: And pursuant to that warrant, regardless of the outcome of the case, ultimately, they had the authority to be on the premises, to execute that warrant, even without the search warrant, didn't they?

[DEFENSE COUNSEL]: Yes, Your Honor, they did.

THE COURT: And pursuant to that, they had the authority to act on evidence in plain sight, didn't they?

[DEFENSE COUNSEL]: Yes, they did, Your Honor.

[¶ 17] At this point in the hearing, it is clear that a plain view scenario is being explored because the district court is attempting to find an alternative justification for the seizure of evidence. It must be remembered, in that regard, that searches and seizures not supported by warrant are presumptively unreasonable and the state bears the burden of proving by a preponderance of the evidence that the circumstances of a particular case fit within one of the exceptions to the warrant requirement. *Gehnert v. State,*

956 P.2d 359, 362 (Wyo.1998). In the context of our case, Officer London's testimony must be measured under the three *Horton* factors adopted in *Taylor*. All we know from that testimony is that Officer London, who was not present when entry into the house was accomplished, says there was evidence in plain view. Even if we assume the officers were rightfully on the premises, we do not know where any items were found or who found them. In truth, we do not know if anything actually was in "plain view." [9] Accordingly, the State did not meet its burden of proving the elements of the plain view exception to the warrant requirement.

[¶ 18] Finally, we must dispose of the State's contention that, if we find there was inadequate justification for issuance of the search warrant, we must remand this case for a "full hearing" on the plain view issue. The State cites no authority for this contention. We are aware of no rule or precedent that gives the State an opportunity, upon an appeal brought by the losing defendant, to have a criminal case remanded to the district court to allow the State to present additional evidence at a pre-trial motion hearing in limine. Such would be exceedingly odd in the circumstances of the instant case, where the State was successful on the issue at the motion hearing.

### CONCLUSION

[¶ 19] Officer London's affidavit contained insufficient information to give the issuing judicial officer a substantial basis from which he could independently find the requisite probable cause. None of the statements within the affidavit were attributed to anyone, making it impossible to judge their reliability. In addition, the testimony at the suppression hearing did not establish the facts necessary to support admissibility of any particular items of evidence under the plain view doctrine.

[¶ 20] Reversed.

---

9. The district court recognized these deficiencies. After asking the questions quoted above, the district court went on to acknowledge that "I don't know what that evidence was at this point."